· No. 2310
Second Circuit Appeal

R. B. SWAYZE v. TRI-STATE UTILITIES CO., INC.

(March 9, 1925, Opinion and Decree.)

(*Syllabus by the Editor*.)

1. **Louisiana Digest—Pleading—Par. 57.**

Where plaintiff's petition states on or about the date of the accident, how the accident happened and the nature of the injury, an exception of vagueness will be overruled.

2. **Louisiana Digest—Telegraphs and Telephones—Par. 7.**

It is the duty of a telephone company towards the public to maintain its telephone lines in such a manner as will keep the wires safe to the traveler.

3. **Louisiana Digest—Telegraphs and Telephones—Par. 7.**

Where a telephone company allows its lines to sag across the public road which causes the wire to strike one riding a truck and jerk him off the truck to the ground, the telephone company is responsible for the resulting damage.

4. **Louisiana Digest—Appeal—Par. 625.** ·

The judgment of the trial court on questions of fact, namely, how an accident happened and the amount of damage sustained, being clearly correct, is affirmed.

(Civil Code, Art. 2315. Editor's note.)

Appeal from Seventh Judicial District Court, Parish of Catahoula, Hon. R. M. Taliferro, Judge.

This is a suit to recover damages for personal injuries caused by a telephone wire being negligently left too low on a road.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

G. P. Bullis, of Vidalia, R. R. Reeves, of Harrisonburg, attorneys for plaintiff, appellee.

Dudley L. Guilbeau, of Opelousas, attorney for defendant and appellant.

ODOM, J. Plaintiff alleges that defendant owns and operates telephone wires and a telephone exchange in the parish of Catahoula this state, and that due to the carelessness and negligence of said defendant company one of its wires, which was stretched across and above a public highway, was permitted to sag and to fall below its proper level or height from the ground and was only a few feet above said highway; and that said wire had been in that position for several days prior to said accident.

He further alleges that said company had been notified of the condition of its wire at this place and had failed to remedy such dangerous condition. He sets out the date, the circumstances of the accident, etc., in paragraph two of his petition as follows:

"On or about November 22nd, 1922, petitioner was riding in an automobile truck in the customary manner of travelers, along the public highway running along the bank of Black River, about one mile south of the Town of Jonesville, in Catahoula parish, state of Louisiana, when and where petitioner was struck by a telephone wire owned and operated by said Tri-State Utilities Company, Inc., and by that company placed across said highway."

He alleges that he was thrown from the truck to the highway and was stunned and rendered unconscious for about two hours and did not fully recover consciousness for several hours and that he has suffered great pain and is permanently injured; and that he still suffers with headaches as a result of said accident.

He alleges that he has been damaged in the sum of $3,000.00 as a result of said accident, for which amount he asks judgment.

This suit was filed on July 13, 1923, and on July 27, 1923, defendant filed an exception of vagueness and asked that the suit be dismissed on the ground that the allegations:

"Touching the time when the injury complained of occurred, the notice of such injury, and the elements of damage said to have resulted, are so vague and indefinite that exceptor is not sufficiently put on notice to enable it to properly defend itself."

This exception was overruled and, on April 8, 1924, defendant filed answer denying liability. It especially denied that its telephone wire had been permitted to sag to a point only a few feet above the highway; but it is alleged:

"That its said wire, at the place alleged, may have sagged, at some time, below the distance at which, from the highway, it was and is usually maintained, but that such sagging or lowering never reached a point lower than fourteen (14) feet above the highway, was due to natural causes, and was corrected within a reasonable time after such occurrence."

And it is then set up that if such condition existed at the time plaintiff collided with said wire, the collision was due to his own negligence and carelessness, and defendant especially pleads contributory negligence on the part of plaintiff.

The case was tried in April, 1924. There was judgment in favor of the plaintiff for the sum of $750.00, and from the judgment defendant appealed.

## ON EXCEPTION OF VAGUENESS.

We think the judgment of the lower court overruling the exception of vagueness was correct. Defendant contends that the allegations of plaintiff's petition with refer-

ence to the time of the accident and injury and the notice of such injury and the elements of damage said to have resulted, are too vague and indefinite. The petition sets out that plaintiff was injured on or about November 22, 1922. It seems to us that is sufficient as to time. We have been cited to no rule and we can think of no reason why a petition in a suit for damages on account of an accident like the one alleged in this case, should set forth the exact hour of the day at which the plaintiff was hurt. Counsel for defendant in brief says that in cases of this kind the company is entitled to notice of the time, place and circumstances and the nature and character of the injury sustained. The pleader, after stating that the petitioner was injured on or about the 22nd of November, 1922, alleges that he was riding on a truck along a public highway running along the bank of Black River about one mile south of Jonesville, in Catahoula parish, when he was struck by one of the wires of defendant company and thrown to the ground and that he was stunned and rendered unconscious and that he suffered great pain and is permanently injured in that he still has headaches as a result of said accident.

We think these allegations sufficient to put defendant on notice and enables it to answer and defend the suit.

## ON THE MERITS.

Counsel for defendant in brief says:

"We are not unmindful of the law regarding the duty of defendant company, towards the public, to maintain its telephone lines in such manner as will keep the highways along and across which they are strung safe to the traveler."

The law governing a case of this kind being thus conceded, the case is resolved into one of fact only.

The plaintiff as a witness in his own behalf says that he was riding on a Ford truck which was running along the highway and that there was a drum of gasoline on the truck "edged up" or, as we understand, was setting on the end, and the plaintiff was sitting on this drum or tank of gasoline. He says that there was a wire owned by defendant company stretched across the road and that this wire struck him across the stomach and jerked him off the truck and that he was balanced on the wire until he hit the ground. He says that he did not see the wire until it struck him and assigns no reason for not seeing it sooner except that he was not looking for a wire.

J. W. Collins, a witness for plaintiff, testified that he was driving the truck and that plaintiff and others were riding with him and that he heard the plaintiff exclaim "lookout" and as he looked back over his shoulder he saw the plaintiff leave the gasoline drum on which he was sitting and that as soon as he could stop the truck he went back and found the plaintiff lying on his back unconscious as though he were dead. He says that the plaintiff was sitting on this gasoline drum which was about thirty inches or three feet high. He is positive that the telephone wire knocked him off the drum. And he testifies that the telephone wire was about four feet from the ground after the accident.

Mr. R. G. Whitehead who lives on the public road at the place where the accident happened, testified that the pole on which the wire was fastened, was leaning towards his residence and that the wire became slack across the road and that he tied the wire up to a pecan tree near his yard. He says that when he tied it up it was high enough above the road to make travel along the road safe and that he

went away from home and stayed some eight or ten days hunting, during which time this accident occurred. He does not know the condition of the wire at the time of the accident. He says that the telephone pole which supported this wire became loose during the overflow in May and June, 1922, and that some hog houses drifted against the pole and caused it to lean considerably. This, as we understand it, caused the wire to get slack. There is some testimony that this telephone pole was reset after the overflow. The local manager of the telephone company testified that he reset it after the overflow, but we are rather inclined to believe that he is mistaken about that. But if it be conceded that he did reset it, he evidently left it insecure because Mr. Whitehead, who lived there, testified that in November, 1922, he found the wire slack and tied it up to a pecan tree.

The testimony satisfies us that this telephone wire was slack and that it sagged to such an extent as to become dangerous; and it further satisfies us that the plaintiff was struck and jerked off the truck by this wire.

The defendant pleads contributory negligence on the part of plaintiff. We do not find that he was negligent. He says he did not see the telephone wire until it struck him, and explains that he was not looking for it.

It is defendant's contention that plaintiff was not, as a matter of fact, struck by its telephone wire and jerked off the truck, but it contends that he became unbalanced while sitting on top of the gasoline drum and fell over. In this we think he is mistaken. The testimony of the plaintiff and that of the driver to the effect that plaintiff was struck by this wire and knocked to the ground, is undisputed; and their testimony to the effect that the wire was slack is corroborated by that of Mr. Whitehead.

Defendant further contends that if the plaintiff was struck by this telephone wire, there is no reason why the other persons who were riding on the truck should not also have been struck by it.

But it overlooks the testimony of the driver to the effect that he and a woman were sitting on a seat which was very low, in fact only a few inches above the bottom of the truck bed, and this plaintiff was sitting on the head of a gasoline drum or barrel which was some thirty inches or three feet high. There were two other men riding on this truck, but the testimony does not show whether they were standing or sitting. The reason the plaintiff was struck and the others not, we think, is because he was sitting on top of this gasoline drum or barrel.

The defendant attempts to show by its local manager, Mr. Fluitt, that its telephone wires were kept above the road and its poles kept in good condition. Mr. Fluitt says that he made a trip down this road practically every week and that he did not find any of the wires too low. He is evidently mistaken about the wires being kept in good condition, because Mr. Whitehead says that this particular one was down and that he had picked it up.

There is testimony that a great many people travel along this road and so far as the record discloses no one else has been injured by this or any other wire. But the fact remains that on this particular occasion this wire was so near the ground that it struck plaintiff and jerked him off the truck.

## ON THE QUANTUM OF DAMAGES.

The testimony shows that plaintiff was thrown from the truck to the ground and rendered unconscious for one or two hours

and was left in a dazed, flighty condition for several hours. There were no wounds or contusions on his head but he suffered from headaches. The accident happened in November, 1922. The case was tried on April 10, 1924, about fifteen months later, and plaintiff says he is still suffering from headaches, which he attributes to the fall. He says he never had headaches before and that he now has to take aspirin to relieve himself. His testimony as to his suffering and as to his present condition is not disputed. He unquestionably had a very severe shock and suffered considerably. It seems that some two or three days after the accident he started to Natchez, Mississippi, to consult a physician as to his condition but on arriving at Vidalia, Louisiana, he consulted a physician who gave him medicine which relieved, for the time, his headache and he went no further. He was evidently alarmed over his condition.

The District Judge who is no doubt personally acquainted with the plaintiff and saw him during the trial, rendered judgment in his favor for $750.00. We cannot say that he has erred.

For the reasons assigned, it is ordered that the judgment appealed from be affirmed with costs.